IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONALD GREEN SR., et al.,    )
                             )
        Plaintiffs,           )
                             )
   v.                         )    No.  10 C 4562
                             )
SCURTO CEMENT CONSTRUCTION,   )
LTD., et al.,                 )
                             )
        Defendants.           )

## MEMORANDUM OPINION AND ORDER

There is nothing inherently troubling about a client's rejection of his, her or its lawyer's recommendations--for example, a lawyer's recommendation to a plaintiff client to accept a proposed settlement.  After all, it is the plaintiff and not the lawyer who will be at risk if the case goes forward and plaintiff loses.  Moreover, the risk also extends to the cost to the client of further work by the lawyer--both fees and expenses.

Those dynamics change, though, when the client has been provided with legal representation pro bono publico, as under this District Court's trial bar program that mandates a lawyer's acceptance of appointed representation for an in forma pauperis client.  In that instance an ill-considered belief on the client's part that he or she knows better than the reasoned professional judgment of the lawyer thrusts an unfair burden on the appointed counsel who (1) has worked on the case and has obtained the prospect of what the lawyer evaluates as a reasonable and wholly acceptable defense offer based on a risk-

reward analysis but (2) if the offer is rejected, will be required to go forward with the active pursuit of the client's claim on his or her own dime (not that of the client).

Just so here. After this Court issued a self-explanatory May 26, 2011 memorandum, settlement discussions ensued with the active guidance of Magistrate Judge Susan Cox. Judge Cox ultimately worked out a mutually acceptable settlement as between plaintiffs Ronald and Donald Green (collectively "Greens") and defendant Scurto Cement Construction, Ltd. But when those same discussions also eventuated in proposals from codefendant Union Local 11, Area 161 ("Union") that appointed counsel advised Greens to accept, they rejected that recommendation. Here are the relevant excerpts from appointed counsel Joshua Karmel's motion for relief from appointment that he has noticed up for presentment on June 23:

> 6. Additionally, during the May 18, 2011 conference, Plaintiffs were presented with options for relief from the Union. Although Mr. Karmel has advised Plaintiffs to accept these options, they believe the litigation should take another course.
>
> 7. At this point, Mr. Karmel feels there is a substantial disagreement between himself and Plaintiffs, with Mr. Karmel recommending the solution proposed at the May 18, 2011 settlement conference and Plaintiffs demanding a "full-press' litigation, including extensive written discovery and multiple depositions.
>
> 8. Further, Mr. Karmel is faced with a June 24, 2011 deadline to respond to the Union's Motion To Dismiss.

2

>    9. Mr. Karmel is a sole practitioner, with another lawyer assisting him in an Of Counsel capacity, with a current case load of approximately fifty (50) Workers' Compensation files and eighteen (18) civil litigation files, at various stages of litigation. Put simply, Mr. Karmel has an extreme professional burden and lacks the time necessary to adequately represent Plaintiffs and respond to the Union's motion.
>
>    10. Mr. Karmel will continue to represent Plaintiffs through the process of exchanging the paperwork and settlement drafts with Scurto.

This Court expects to respond to the motion by attorney Karmel by relieving him of the responsibility for further representation of the Greens. In the type of situation he has described (and particularly when appointed counsel and the client have reached an impasse in the pro bono publico representation context), this Court will never hold an unwilling client hostage to the lawyer or an unwilling lawyer hostage to the client.

Nor, under the circumstances of this case, will this Court consider the appointment of new counsel from the trial bar to represent the Greens. It has reviewed Union's motion and has found it to be indisputably well-grounded in fact and law in one respect and more than colorable in the other. What follows is an analysis of the Greens' total position vis-a-vis Union in this litigation.

As for Greens' claims of race discrimination advanced under Title VII, there is no question that they brought this lawsuit after expiration of the 90-day time limit that kicked in after EEOC's right-to-sue letter. This Court had spotted that problem

from the very outset--its July 26, 2010 memorandum order ("Order I"), issued sua sponte just four days after Greens filed suit, identified that threshold problem, and its August 12, 2010 memorandum order ("Order II") explained why Greens' response had not really countered the problem of the lawsuit's untimeliness. Union's motion to dismiss, filed back in February 2011 but deferred while the settlement efforts before Magistrate Judge Cox were in the works, identified the same flaw spoken of in Orders I and II--its supporting Mem. 3-5 is unanswerable. On that score, the Memorandum points in part to our Court of Appeals' unpublished order in Simmons v. Ill. Dep't of Mental Health and Developmental Disabilities, No. 95-1547, 1996 WL 19262 (7th Cir. Jan. 18). Although Simmons is nonciteable as precedent pursuant to Seventh Cir. App. R. 32.1(d), the factual situation dealt with there is so strikingly parallel to that posed here, and its reasoning is so cogent, that it carries great persuasiveness by parity of reasoning. In sum, Greens' Title VII claims against Union are indeed dismissed.[1]

As for Greens' asserted claims under 42 U.S.C. §1981 ("Section 1981"), Union's Mem. 9 states correctly that any claims

---

[1] Union's Mem. 5-9 also sets out a number of other substantive legal problems with Greens' Title VII claims. Although at least some of the arguments advanced by Union' counsel clearly have legal merit as independent bases for dismissal, there is no need to address them because the claims' untimeliness alone is a fatal flaw.

based on alleged acts that occurred before July 22, 2006 are barred under the four-year limitation period applicable to such claims (see Dandy v. United Parcel Serv., Inc., 388 F.3d 263, 269 (7th Cir. 2004), relying on Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004)).[2]

As to any portion of Green's putative Section 1981 claims that is not thus outlawed by limitations, a somewhat more complex situation is presented. There Union's Mem. 10 seeks to bring any such claim down by pointing to EEOC v. Pipefitters Ass'n, Local 597, 334 F.3d 656, 658 (7th Cir. 2003) and to a number of the nontiming problems with Greens' Title VII claims as a basis for dismissal. That contention may or may not ultimately be successful--the answer will come much more easily when the existing Complaint is cleaned up to eliminate the now-dispatched matters.

Accordingly Union's motion is also granted as to the Section 1981 claims, but Greens are granted leave to tender a proposed Amended Complaint that must be whittled down to remove what has been held in this opinion to constitute chaff, thereby limiting the case to what figuratively constitutes arguably healthy Section 1981 wheat. This Court anticipates that the timetable for any such amended pleading can be discussed at the June 23

---

[2] As reflected earlier, Greens filed their Complaint on July 22, 2010.

5

presentment date of attorney Karmel's motion.

_____
Milton I. Shadur
Senior United States District Judge

Date: June 20, 2011