```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION
```

RONALD GREEN SR., et al.,        )
                                 )
            Plaintiffs,           )
                                 )
    v.                           )    No.  10 C 4562
                                 )
SCURTO CEMENT CONSTRUCTION,      )
LTD., et al.,                    )
                                 )
            Defendants.           )

## MEMORANDUM OPINION AND ORDER

Ronald Green Sr. and Donald Green ("Greens") have sued Operative Plasterers & Cement Masons International Association, Local 11, Area 161 ("Union"), charging it with racial discrimination and retaliation in violation of 42 U.S.C. §1981 ("Section 1981"). Greens' action originally contained both the Section 1981 charges and assertions of race discrimination under Title VII. But on June 20, 2011 this Court issued a memorandum opinion and order ("Opinion") that (1) dismissed the Title VII claims, finding that Greens had brought suit too late (past the statutory 90-day time limit after Greens had received an EEOC right-to-sue letter), (2) held that any Section 1981 claim depending on acts that occurred before July 22, 2006 was barred by a four-year limitation period and (3) granted Greens leave to file an Amended Complaint ("AC") that removed the time-barred allegations. They did so on August 11.

Now Union has filed a motion to dismiss the AC under Fed. R. Civ. P. ("Rule") 12(b)(6), and the litigants have briefed the

matter. For the reasons stated here, the motion is denied.

## Rule 12(b)(6) Standards

Under Rule 12(b)(6) a party may move for dismissal of a complaint on the ground of "failure to state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562-63 (2007) was the first case to repudiate, as overly broad, the half-century-old Rule 12(b)(6) formulation announced in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." And post-Twombly cases have further reshaped a new Rule 12(b)(6) standard.

First Twombly, 550 U.S. at 570 held that to survive a Rule 12(b)(6) motion a complaint must provide "only enough facts to state a claim to relief that is plausible on its face." Or put otherwise, "[f]actual allegations must be enough to raise a right of relief above the speculative level" (id. at 555). Then Erickson v. Pardus, 551 U.S. 89 (2007)(per curiam) and Ashcroft v. Iqbal, 556 U.S. ---, 129 S.Ct. 1937 (2009) provided further Supreme Court enlightenment on the issue.

Before Iqbal our own Court of Appeals, in Airborne Beepers & Video, Inc. v. AT & T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007) described Twombly and Erickson as establishing "only that

2

at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." And more recently Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) has confirmed that the Airborne Beepers reading of pleading law post-Twombly and post-Erickson remains accurate after Iqbal. Brooks, id. describes Iqbal as "admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone can do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims, that they must do more."

Familiar Rule 12(b)(6) principles--still operative under the new pleading regime--require this Court to accept as true all of Greens' well-pleaded factual allegations, with all reasonable inferences drawn in their favor (Christensen v. County of Boone, 483 F.3d 454, 457 (7th Cir. 2007)(per curiam)). What follows in the next Section adheres to those principles.

**Background**

Greens are African-Americans and members of Union (AC ¶3),[1] which uses a referral system to dispatch its members to various job sites (id. ¶10). That system refers members for work based on the time since their last job, with the member who has been

---

[1] This opinion cites to the AC as "AC ¶--," to Greens' memorandum as "G. Mem. --" and to Union's responsive memorandum as "U. Mem. --."

3

without work the longest being first in line for a new assignment (id. ¶11). But Union gerrymandered the referral system so that African-Americans such as Greens are given, because of their race, shorter jobs that pay less (id. ¶¶14-16). Greens filed grievances with Union, EEOC, the Illinois Department of Human Rights and the National Labor Relations Board ("NLRB"), because of which filings Union retaliated against Greens (id. ¶17).

### Discrimination Claim

U. Mem. 4 contends that Greens failed to plead two elements of their Section 1981 claim adequately: intentional discrimination based on race and interference with an activity protected by Section 1981. But the AC passes muster in both respects.

First, as to intentional discrimination, AC ¶12 simply states:

> Defendants, however, have been discriminatory in their application of the referral system on account of Plaintiffs' race, African American.

Union says that's a bare recital of an element of a claim, which Iqbal deems insufficient. But Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998) has held that "a general allegation of intent" to discriminate based on race is sufficient:

> "I was turned down for a job because of my race" is all a complaint has to say.

Greens assert that they were prevented from making contracts because of their race. Bennett--which Union does not even

4

cite--holds that is sufficient in a pleading.

True enough, <u>Bennett</u> antedated <u>Twombly</u> and <u>Iqbal</u>, and the latter (129 S.Ct. at 1949) states:

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

Indeed, this Court notes two post-<u>Iqbal</u> District Court cases that are more demanding: one cited by Union (<u>Johnson v. Vill. of Bellwood</u>, No. 09 C 5011, 2010 WL 2653335, at *2 (N.D. Ill. July 1)(which does not discuss <u>Bennett</u>)) and the other not mentioned by Union (<u>Riley v. Vilsack</u>, 665 F.Supp.2d 994, 1004 (W.D. Wis. 2009)(which does discuss <u>Bennett</u>)). But both of those opinions have missed the fact that our Court of Appeals has twice reconfirmed <u>Bennett</u>'s holding, first in <u>EEOC v. Concetra Health Servs., Inc.</u>, 496 F.3d 773, 781-82 (7th Cir. 2007)(post-<u>Twombly</u>, though pre-<u>Iqbal</u>) and then implicitly in <u>Swanson v. Citibank, N.A.</u>, 614 F.3d 400, 406-07 (7th Cir. 2010)(post both <u>Twombly</u> and <u>Iqbal</u>).

If Union were correct that Greens must provide factual support now, they would be unable to get past the pleading stage. And that would be at odds with the <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) burden-shifting approach to proving discrimination. Greens have alleged that (1) they are in a protected class, (2) they were qualified for the work they sought, (3) Union denied them that work and (4) Union gave the

work to similarly situated people who were not members of the protected class. That suffices for a prima facie case of racial discrimination under McDonnell Douglas (Zaccagnini v. Chas. Levy Circulating Co., 338 F.3d 672, 675 (7th Cir. 2003)--and if that's enough at the evidentiary stage of a lawsuit, it certainly enables Greens to get past the pleading stage.

As for Union's other contention that Greens failed to plead the third Section 1981 element--Union's interference with a protected Section 1981 activity--adequately, Union faults Greens for failing to "allege that there were any specific jobs to which they were not dispatched in favor of a similarly situated non-African American" (U. Mem. 4). But any such requirement of fact pleading was expressly disavowed in Twombly, Erickson and Iqbal (see Swanson, 614 F.3d at 403).

Greens have pleaded that Union interfered with their right to contract by funneling better jobs to non-African-American Union members (AC ¶¶14-16). That is certainly enough for now. Although Greens will have to present evidence of specific instances of Union's behavior at the summary judgment or trial stage, the function of Rule 8 would actually be defeated by a requirement that Greens list their proof in the AC (Bennett, 153 F.3d at 519).

## Retaliation

Union also argues that Greens failed to plead retaliation

6

under Section 1981 adequately. But before this opinion turns to the merits of Union's argument, a moment or two must be spent on the issue raised in Union's memorandum that discloses its counsel's lack of understanding of a fundamental principle of the federal practice.

U. Mem. 7 complains that Greens "combine their claims of retaliation and discrimination in one count, and it is not clear which allegations in the Amended Complaint are meant to state a retaliation cause of action." But the relevant concept in federal practice is <u>not</u> a plaintiff's "cause of action" (the Illinois state law concept, which calls for an identification of the legal theories under which a party hopes to succeed, with different legal theories being set out in different "counts"), but rather the plaintiff's "claim" (the term used throughout the Rules). If this Court could prescribe a single opinion for mandatory reading by every federal practitioner, <u>NAACP v. Am. Family Mut. Ins. Co.</u>, 978 F.2d 287, 292 (7th Cir. 1992) would be in, or very near to, first place.[2]

Union's counsel would do well to read and grasp what is taught in the <u>NAACP</u> opinion and, relatedly, the second sentence of Rule 10(b) as to the function prescribed for separate counts in federal pleading. Though it may often be disregarded as a

---

[2] That is far from the only case that explains and applies the principle stated in the text. It is rather, in this Court's view, the most lucid exposition.

7

matter of convenience or habit by those schooled in the state system, that Rule does not obligate Greens to split their discrimination and retaliation contentions into different counts.

Union fares no better in attacking the merits of Greens' retaliation allegation. First, U. Mem. 7 says that Greens failed to plead retaliation adequately, because under Section 1981 the retaliation itself must have a racial motivation. That's a throwback to McKnight v. Gen. Motors Corp., 908 F.2d 104 (7th Cir. 1990), a case decided in the wake of Patterson v. McLean Credit Union, 491 U.S. 164 (1989). McKnight, 908 F.2d at 112 interpreted Patterson as barring a retaliation contention when the adverse action was occasioned by an employee's complaining about discriminatory conduct. But McKnight, id. at 111 did suggest that retaliation designed to interfere with the enforcement of a contract might be actionable under Section 1981, not because it was retaliation for engaging in protected conduct but rather because the retaliation could deter protected conduct.

Courts often use "retaliation" to refer to the sort of conduct prohibited by 42 U.S.C. §2000e-3(a): an adverse action motivated by a person complaining of illegal conduct. McKnight, however, was played out against a backdrop in which that vintage of retaliation was not actionable under Section 1981, and so the "retaliation" that McKnight addressed was really just a description of a type of adverse action prohibited by Section

8

1981 (interference with a person's ability to contract because of that person's race). That's why McKnight and a few later cases insisted that the retaliation itself have a racial motivation.

Today, however, CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008) has removed any doubt that retaliation occasioned by complaints of discriminatory conduct is actionable under Section 1981 whether or not the retaliation was intended to deter a right protected by that section. Hence Union is not correct that Greens had to plead that the retaliation inflicted on them was racially motivated. It is enough that Greens have pleaded that Union retaliated after they complained of Union's interference with their Section 1981 rights.

Although Greens have failed to discuss McKnight or raise CBOCS in their response, that does not justify trashing their AC. After all, it has been crystal clear for some 3-1/2 years (since CBOCS) that retaliation claims are actionable under Section 1981. Even so, Greens' counsel would do well to take all arguments-- even incorrect ones--seriously in any future briefing.

Union also seeks to invoke Twombly and Iqbal yet again to attack Greens' pleading of the retaliation claim. In doing so, Union once more asks too much at the pleading stage.

On that score U. Mem. 9 calls the AC deficient because (incorrectly referring to Greens in the singular) it fails to say "how the Plaintiff was retaliated against, who specifically

9

retaliated against him, or a temporal nexus between the charge filing and alleged retaliation." But how, who and when are questions that a complaint must answer when pleading fraud under Rule 9(b)(Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co., 631 F.3d 436, 441-42 (7th Cir. 2011), while Rule 8 requires only that Greens provide "fair notice" of their claim by giving "enough details about the subject-matter of the case to present a story that holds together" (Swanson, 614 F.3d at 404). Greens readily cleared that hurdle: They alleged that Union had a discriminatory practice, that they complained about it to everyone in sight--Union, the EEOC, the Illinois Department of Human Rights and the NLRB--and that Union retaliated against them for making those complaints.

### Timeliness

Finally, Union says that Greens do not specify in their pleadings when the discrimination alleged in the AC took place. Union sees that as a problem in light of the Opinion's barring of claims based on alleged acts that occurred before July 22, 2006.

Although Greens have inexplicably failed to respond to that contention, it should be remembered that the Opinion directed Greens to file an amended complaint that eliminated the dismissed subject matter (including Section 1981 claims based on alleged pre-July 22, 2006 conduct). It has therefore been assumed here that Greens' filing had complied with this Court's directive--but

10

if that assumption should prove incorrect, Union will find adequate remedies in the various fee-shifting mechanisms available under the Rules. Again Greens' counsel would do better not to leave such matters to chance and to be more thorough in the future.

### Conclusion

Union's motion to dismiss is denied, and it is ordered to answer the AC on or before November 10, 2011. This action is set for a status hearing at 8:45 a.m. November 14, 2011.

_____
Milton I. Shadur
Senior United States District Judge

Date: October 27, 2011